**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS**

**DHEADRY LOYD POWELL,**

    **Petitioner,**

    **v.**

**UNITED STATES OF AMERICA,**

    **Respondent.**

Case No. 05-20067

## MEMORANDUM & ORDER

This matter comes before the court upon petitioner Dheadry Loyd Powell's Motion to Reduce Sentence (Doc. 157).

### I.  Background

On July 27, 2017, petitioner filed a motion to reduce his sentence pursuant to 18 U.S.C. § 3582(c)(2) and § 1B1.10(c) of the Sentencing Guidelines. (Doc. 157.)  Petitioner argues that Amendments 750 and 782 to the Sentencing Guidelines should apply to his case, reducing his sentence. The government opposes petitioner's motion because although the amendments reduce petitioner's drug offense level, they do not reduce the applicable guidelines range.

Petitioner pleaded guilty to: (Count I) conspiracy to distribute and possession with intent to distribute 50 grams or more of cocaine base, and (Count II) money laundering.  At the sentencing hearing on May 1, 2007, the court found that petitioner's total offense level should be level 48, but because the sentencing guidelines are capped at level 43, petitioner's total offense level for purposes of sentencing was level 43.  Petitioner's criminal history category was determined to be four.  He was sentenced to life imprisonment on Count I and 20 years on Count II to run concurrently, followed by five years of supervised release.

**II.     Legal Standard**

District courts generally lack jurisdiction to reduce a sentence once it has been imposed. *United States v. Kurtz*, 819 F.3d 1230, 1233–34 (10th Cir. 2016).   18 U.S.C. § 3582(c)(2) provides that the

> court may not modify a term of imprisonment once it has been imposed except that . . . in the case of a defendant who has been sentenced to a term of imprisonment based on a sentencing range that has subsequently been lowered by the Sentencing Commission pursuant to 28 U.S.C. 994(o), upon motion of the defendant . . . the court may reduce the term of imprisonment, after considering the factors set forth in section 3553(a) to the extent that they are applicable, if such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.

§ 3582(c)(2).

Section 1B1.10 is the policy statement governing § 3582(c).  It requires a court considering a sentence reduction to "determine the amended guideline range that would have been applicable to the defendant if the amendment(s) to the guidelines . . . had been in effect at the time the defendant was sentenced."  U.S.S.G. § 1B1.10(b)(1).

"In Amendment 750, the Sentencing Commission revised the drug equivalency tables in the commentary to § 2D1.1 so that one gram of cocaine is now treated as the equivalent of 3571 grams, not 20 kilograms, of marijuana."  *United States v. Robinson*, 506 F. App'x 840, 841 (10th Cir. 2013). Amendment 782 reduced the base offense levels attributed to some drug offenses in the Drug Quantity Table found in § 2D1.1 of the Guidelines, which lowered the Guidelines minimum sentences for drug offenses.

Reducing a sentence pursuant to § 3582(c)(2) requires "a two-step inquiry.  A court must first determine that a reduction is consistent with § 1B1.10 before it may consider whether the authorized reduction is warranted, either in whole or in part, according to the factors set forth in § 3553(a)."  *Dillon v. United States*, 560 U.S. 817, 826 (2010).   A petitioner is not entitled to a reduction if "an amendment . . . does not have the effect of lowering the defendant's applicable guideline range."  U.S.S.G. § 1B1.10(a)(2)(B).  "The Guidelines policy statements . . . explain that § 3582(c)(2) proceedings do not

constitute a full resentencing of the defendant." *United States v. Battle*, 706 F.3d 1313, 1317 (10th Cir. 2013).

### III. Discussion

The court's first step is to determine "the amended guideline range that would have been applicable to the defendant had the relevant amendment been in effect at the time of the initial sentencing." *Dillon*, 560 U.S. at 827.

At sentencing, petitioner's base offense level was 40, plus two levels for being a conviction under 18 U.S.C. § 1956, plus four levels for being a leader or organizer of criminal activity involving five or more participants under § 3B1.1(a), plus two levels for obstruction of justice, equaling a total offense level of 48. Petitioner's sentencing range was based on a total offense level of 48 (treated as 43 based on U.S.S.G. Chapter 5, Part A's application note instructing that an offense level greater than 43 should be treated as an offense level of 43) and a criminal history category of IV.

Before the court can determine what petitioner's post amendments guidelines range is, it must determine what amount of drugs are attributable to petitioner, if the district court did not "make a separate, explicit calculation" of drug quantity at petitioner's original sentencing. *Battle*, 706 F.3d at 1318. In such cases, the court may rely on findings it adopted at petitioner's original sentencing. *Id.* The Tenth Circuit has found "that a district court's prior attribution of 'at least' 1.5 kilograms of crack (or other similar language) to defendant does not bind the court to a finding of exactly 1.5 kilograms in a subsequent § 3582(c)(2) proceeding." *Id.* at 1319. The district court may "look to its previous findings, including any portions of a PSR adopted by the sentencing court, to make supplemental calculation so drug quantity at resentencing if such calculations are necessary to determine the amended guideline range that would have been applicable in light of a retroactive Guideline amendment." *Id.*

The court therefore returns to the plea agreement, the PSR, and relevant exhibits to determine the quantity of drugs attributable to petitioner.  At sentencing, the court addressed petitioner's objection to 1.5 kilograms of cocaine base being the quantity of drugs attributable to him for purposes of calculating his base offense level under § 2d1.1.

The court found that petitioner's plea agreement stated that the amount of cocaine base would be more than 1.5 kilograms for purposes of Count I under U.S.S.G. § 2D1.1.  The court noted that petitioner heard this statement from the plea agreement read aloud at his change of plea hearing and agreed to it and said he understood the plea agreement and freely and voluntarily entered his guilty plea.

The court also relied on Government's Exhibit 6, which was a summary of the activity defendant was involved in involving the sales of the cocaine base, and that summary indicated that over three kilograms of cocaine base were attributed to petitioner.

The government asks that the court find that the quantity of cocaine base exceeded 2.8 kilograms of cocaine base.

The court will so find based on the following information from the PSR:

- Petitioner's role in the conspiracy was obtaining large quantities of cocaine or cocaine base and then distributing various amounts to lower level distributors.  Petitioner recruited others to sell cocaine on his behalf and assist him with drug trafficking activities;

- Petitioner also made direct sales to various customers and bulk sales to other drug dealers;

- Between August 10, 2001 and October 28, 2004 search warrants at petitioner's residences resulted in the seizure of various firearms, multiple scales with cocaine residue, plastic baggies, marijuana, cocaine, ecstasy, and large amounts of cash.  Most of the cash was hidden inside foil under the refrigerator at petitioner's residence;

- Petitioner sold crack cocaine to confidential informants on at least eight occasions between September 4, 2002 and July 8, 2003, totaling 47.85 grams. For these sales, petitioner drove various vehicles registered to family members or girlfriends;

- Petitioner used family members to help him exchange small denominations of currency from drug sales for larger bills at local banks. Banks started keeping records of these transactions. Two banks in the area documented currency exchanged totaling over $75,000. Petitioner also used drug sales to purchase various vehicles and trailers that he titled in family members' names to conceal assets, including a pickup, a car, and a trailer. These currency and asset purchases totaled at least $99,673, representing 99.673 ounces or 2.825 kilograms of crack cocaine;

- Paragraph 35 of the PSR concluded that in addition to the 2.825 kilograms, petitioner personally sold at least 499.05 grams of cocaine, the currency found under the refrigerator at his house represented 362.88 grams of cocaine base, and 7.81 grams of cocaine base were seized from his trailer or after sales to confidential informants.

The Tenth Circuit has noted that "a district court may estimate the amount of drugs attributable to a defendant" but that "when choosing between a number of plausible estimates of drug quantity, none of which is more likely than not the correct quantity, a court must err on the side of caution." *Battle*, 706 F.3d at 1320. Because the drug quantities in paragraph 35 of the PSR could potentially contain some overlap—for example the currency found under the refrigerator could also have been counted in the currency exchange calculation—the court will find that, at a minimum, the drug quantity attributable to petitioner is 2.825 kilograms calculated from currency exchanges and asset purchases. The court finds this to be a conservative estimate based on the PSR, because totaling the drug quantities in paragraph 35 results in a total drug quantity of nearly 3.7 kilograms.

The court finds that an evidentiary hearing on drug quantity is unnecessary to resolve this matter, because it considered and overruled petitioner's objection to various paragraphs regarding drug quantity calculations—including paragraph 35 at the sentencing hearing.  And unlike in the facts before the Tenth Circuit in *Battle*, the facts relied on by the court in making this determination were attributable to petitioner personally, not to the conspiracy as a whole.

Based on a drug quantity of at least 2.825 kilograms, the amended Guidelines range that applies to petitioner is 34 under § 2D1.1(c)(3).  His base offense level would be 36 after adding two levels because petitioner possessed a firearm.  Adding the two levels for being a conviction under 18 U.S.C. § 1956, plus four levels for being a leader or organizer of criminal activity involving five or more participants under § 3B1.1(a), plus two levels for obstruction of justice, equals a total offense level of 44.  This would result in no guideline range reduction because of Chapter 5 Part A's application note that "[a]n offense level of more than 43 is to be treated as an offense level of 43.  Petitioner's applicable guideline range is still life imprisonment.  Petitioner's motion to reduce his sentence is therefore denied.

Because the court finds that a reduction is not authorized under § 1B1.10, it need not consider whether a reduction would be warranted under the factors set forth in § 3553(a).  But even if the court had determined that a reduction was authorized under § 1B1.10, the court finds that a reduction is not warranted under the § 3553(a) factors.  Petitioner suggests that his age—61 years old, time spent in prison—13 years, and good behavior, warrant a reduction under § 3553(a).

The court disagrees.  Petitioner's criminal history, pattern of criminal conduct as an adult, his leadership role in his current conviction, and the scale of the criminal activity involved in petitioner's crime of conviction do not weigh in favor of a reduction.  Additionally, to promote respect for the law, deter criminal conduct, and protect the public, the court finds that a reduction is not warranted.

**IT IS THEREFORE ORDERED** that petitioner's Motion to Reduce Sentence (Doc. 157) is denied.

Dated April 5, 2018, at Kansas City, Kansas.

                                        s/ Carlos Murguia
                                        **CARLOS MURGUIA**
                                        **United States District Judge**